Good afternoon, sir. Good afternoon, Honorable Justices. Norm Mattione for the Appellant. The case is really about one issue, and that is whether there's a triable issue of fact, because this comes to you on a summary judgment, and the record is simply the pleadings and reproductions of documents. We never got to the discovery stage. The key fact is this is an existing, or was an existing, low-income apartment house that was a valid use in the City of Mountain View. It had been closed down. It had suffered some effect from that a condominium project. Because of the recession and the inability to finance his new project, he sought to bring back what he had. Let me ask you this. As I understand it correctly, and tell me if I'm wrong, it's undisputed that the place then became dilapidated, became infested with rodents, other problems. It doesn't shock my conscience that they would want to have some kind of review of this, a development review, before they let it be reopened again for human habitation. What's wrong with that exactly? The problem is, if we look at the development review ordinance, that it is not designed to look at rehabilitation unless you're modifying. If you're putting back, if your roof is damaged, whether it be by a fire or some and you're putting it back exactly, you're not changing the design, you're not changing the elevation of the roof, and in fact this is a flat roof, that is a building permit issue. It's not a design review issue. In this case, there were multiple interior items that had to be addressed. Re-carpeting, putting in new appliances. The design review specifically states that it does not apply to the interior, and when you look at the ordinance itself, and I think the findings make clear that it's all about design, because the findings specify conformance to the general plan, conformance to the zoning goals, architectural design of the structure, siting, configuration, and setting in the neighborhood, vehicular and pedestrian access design, landscape design. The ordinance doesn't talk about rehabilitation, and the people that administer this, the design review committee, are architects. Those people are not trained as building officials are in terms of code requirements, and building code is very much about the health and safety of the community, measuring up to the standards, uniform standards, throughout California of building requirements, building safety, and so if you have, as I say, a fire that affects your roof, you go in for a building permit to put it back. You don't go through design review. Now, if you're changing and you're adding a room, you're changing the pitch, perhaps, but even the ordinance design review says if it's minor, that doesn't go through. Let me ask you, even if you're right, how do you get a civil rights case out of this? I mean, we don't sit as the super-duper board of appeals of construction review. The zoning review. We're not the zoning review board, or, you know, how do you get a federal civil rights action out of this, even if they didn't follow their ordinance properly? You get it because of a couple of reasons. They did not treat Terese the same as any other applicant. They didn't even treat Terese the same as they did in 2006 when they issued him a building permit to redo the roof at that time. That's the equal protection issue you're raising? Yes. Didn't Bay West have to go through the design review? No, there's no indication of that in the record. Because it's a repair of a roof, it's not changing under the design review ordinance, or the development review, excuse me, but I interplay those two words because that's exactly what development review is all about. You're saying that the new owner did not have to go through a development review? I'm sorry, didn't you? You're saying that the new owner, the people who bought it finally, did not have to do the design review? No, they did. They did, that's what I'm saying. The fact that they consented has nothing to do with Terese. I thought you told me they didn't have to do it. They did do it. They're coming up with a new project, the purchasers of this property. Terese is rehabilitating the property that had been there for a number of years, the property he bought. He's not changing the stairways. He's not changing the look of the exterior. He's putting it back, and the point is that he had a vested right to that. That initially was denied by the city attorney. Then the city attorney reversed his position and said the city attorney's position was that the old use had lapsed because there was a new permit for 144 units of condominium that hadn't been executed but had been approved. Then the attorney reversed himself on that and said, well, yes, you can, but you're going to do it this way. The other part to your question a few minutes ago is what's different about this case is that we have alleged what we think are facts, and there are inferences in the record that more than suggest would point to the fact that there was a pretext here. Terese was called on the development review carpet so that the city could have discretion. They could exact a condition of repaying some fees the city volunteered to pay to relocate the old tenants, low income tenants. The other pretext is, and it's throughout the record, that the Wagon Wheel Homeowner Association next door was delighted to have the approval to condominiums so that low income would go out of their neighborhood. And when Terese couldn't execute that because of the economy at the time, they did not want him to return to that. And the city attorney, the planning director, all are evidencing this is an issue that has to go to the council, either because money were expended for another project, the new condominium project, by the city voluntarily, and you will not find incidentally in the development review anything about repayment of affordable housing funds that the city may make available. Nonetheless, that was what the city was pushing Terese to do. The city in its brief says it just wanted to that. Discuss it. It's clear many times the city attorney, the planning director says the reports to the council when Terese finally got there on the denial of this, not the denial, the issuance and the pulling of a second roof permit, the report speaks to the council's got to address the repayment. I would take on summary judgment, I would take as true your statement that they were trying to exact the repayment of the $127,000. I'll accept that as true that they were trying to do that. Okay. What I'm not clear is why they can't do that. They can't do that, because it was attached to a project that had not been fulfilled. It wasn't the original apartment house that he's trying to go back to. It was first of all exacted, not exacted, it was never exacted in the approval of the development for the condominium project. That's number one. So after the fact, they're seeking to do it. Number two, Terese did his own assistance to tenants to help them move out from the old project. The city volunteered to take funds out of its housing program wherever to supplement that. Terese didn't ask for it, but when he comes back to go back to what he had, then they say, you're going to have to repay that. And the planning director, there's other evidence, is indicating this is going to the council because Terese has been a problem. And the neighbors have concern with low income and they need to be heard by the council. When you look at the development review ordinance, it's set up to go to the development review committee. Nothing goes directly to the council. Another indication that Terese is treated differently than what the ordinance itself describes. They're taking this to the council because there's discretionary decisions to be made on exacting a refund of monies that Terese didn't ask for, didn't volunteer to pay. The city volunteered on its own. It's got the ability when the neighbors come to look at their concerns and they are beating the drums politically that this low income housing should not return. Those are the things that he's treated differently from. And so, you know, I guess I look at that and I look at the phrase shocks the conscience. And from a lay person's standpoint, having some familiarity with municipal law, I guess it doesn't shock my conscience. But when I read the cases and somebody is not treated equally under the law or by pretext, who was put through a process. Who was treated better? Can you name somebody who was treated better in this similar situation? Who was treated better? Yeah. I mean, who was similarly situated? Who's treated differently? Terese at one time was treated better. Terese, the applicant that built the premises was treated better in terms of going back and getting a building permit for re-roofing. There were two building permits issued without design review in the past for re-roofing. Terese got a building permit for repair of a carport that somebody ran into. He didn't have to go through design review. The ordinance itself as testimony, reports from planning people, from city code enforcement people said, well, this isn't the usual way we do it, but in this case, we're going to do it. The city attorney himself acknowledges he elevates this to development review. I see you're down to three minutes and I want to make sure you have time for rebuttal. Did you? Thank you. Okay. Thank you. Thank you very much. Okay. No, no, that's fine. You're doing just great. Good afternoon. Good afternoon. My name is Catherine Alberts on behalf of the city. I'd like to introduce the city attorney, Janie Quinn, and the senior deputy attorney, Nicole Wright, who are here with me today. I think that Capellan's argument was very telling and so are the court's questions. This isn't a federal issue. This is a dispute about a statutory interpretation of the city's ordinance, a development review ordinance. The city interpreted it one way, to allow this project to go through a development review process. They disagree with us. Okay. But that isn't conscious shocking. It isn't clearly arbitrary and irrational. It isn't lacking in any reasonable government interest. This is a building that, as the court noticed, was undisputably dilapidated. It needed more than a new roof. It needed more than paint and new carpets. It needed a complete overhaul. Exterior, sagging carports, drainage, gutter problems, path of travel ADA compliance, brand new landscaping. They want you just to see these little things and say design review doesn't come into effect. So in the government's interest, in their duty and right to make sure that if people are going to move into this building, that it's safe and that the work gets done properly, they exercise their discretion to apply a design review to this project and want to look at the project as a whole to make sure that nothing was getting hidden that should be fixed, that work wasn't being done unpermitted. And there are facts in the record to support the fact that unpermitted work was already going on by the appellant. And they were trying to get through to inspection by covering things up with paint and carpet. So the city is justified. I'm sorry. If we assume as a fact that the city had a discriminatory motive, does that affect anything? That is, that they wanted to discriminate against people who are going to bring low-income housing into the neighborhood. Does that make any difference? I would say under the facts here, no. And the reason is, is because when there are, when there is evidence to support the justifiable government intent, justifiable government interest, improper motive, improper reasoning or bias of the neighbors of whoever doesn't overturn the justifiable government interest and the rational relationship between the city wanting to fix a property that was dilapidated in the most efficient manner possible. Let me ask you, let me ask you this. Did they have any legal obligation to pay back the $127,000? At this point, there's, I would say that it was a matter of maybe legal debate at that point. Matter of what? I'm sorry. And on their residence and on the property, which then was as a public entity, you just don't give away gifts. So when the project didn't go through and reliance on the project going, not going through, they spent public money. When the project didn't go through, the public has a right to get that money back. Can't have a public gift. Did they sign a contract to pay it back? No, they didn't. Or a promissory note or anything like that? No, they did not. But the issue about the money is there was never a condition placed on them. Mr. Martello made statements and construing them in the light most favorable to plaintiffs, he said, I mean, sorry, the appellants, there's no, we want to have the money back before you get permits. The council never imposed that condition. If they had, if this case would be completely different, if they had actually just gone through the process, gone through a development review, and at the end of development review, if the city council said, I'm not going to give you your permit unless you pay the money, and everybody had vented their legal arguments, and the council still said, no, you're going to pay back the money, we would be here under different circumstances. There could have, a writ would have taken place. Maybe there would have been a takings claim. I don't know. But there, then the extraction, the We're not there yet, because all you have is the statement of a city attorney, and a planning zoner. They're not the final official policymakers of the city, who is the only defendant here, on that issue. There has been no condition. But even regardless, the test here is conscious shocking. Is it conscious shocking that a city wants to get money, public money back, that it spent on reliance of certain acts and benefits that can put on a property owner? No. Is it conscious shocking? Is it arbitrary? Does it destroy the actual evidence of a legitimate government interest and a rational relationship? No, because you have to, if it's at least fairly debatable, it passes rational relationship. Unless you negate every real proper legitimate government interest, you still pass that test. So even in cases where they have maybe improper motive, there's the case with Stubblefield, where one councilman has got it out for this developer, and he keeps passing things that are not going to let these apartment buildings get in place. And the court says, no, you didn't negate everything. There are still facts setting up a rational relationship to a government interest behind the passage of the ordinances, behind the city's actions. So you don't rise to the level of a constitutional challenge. Let me just see if Judge Noonan has any questions. No questions. Okay, thank you very much, Ms. Albers. Mr. Mattioli, back to you. Back to the shock to conscience issue, that is a standard that does not apply to equal protection or an unconstitutional condition. Moreover, it's for the jury to decide on the evidence that was instructed the police to arrest people that were doing painting and putting carpeting in the building. Again, items that require no discretionary review, development review, exempt its interior work or its painting. It's not changing anything. The inspector comes out and says, I was directed to take this building apart, meaning he's going to go through everything over zealous enforcement. There's a number of things that can be weighed in terms of whether there's the shock to conscience, if that's the required test on one element of what was impermissible basis for denial. And I tell the justices that that is repeated over and over again about the refund of monies, $127,000 to the city. It's in the final report that is given to the council when Theresa appeals the revocation of a second roof permit that the money is something that's on the table and needs to be discussed. The Lockaway case talks about that being an impermissible basis. And so you can have a legitimate concern as a city, obviously, about health and welfare. That can be directed through development review for projects that qualify. Health and welfare is also addressed through the building code and meeting the standards of the building code, which Theresa tried and tried to do. He got permits. They were revoked. He had over-the-counter. No problem. Staff felt it fit the requirements perfectly. Then it's revoked. So he is continually on a merry-go-round by the city because he will not give in to design review. Thank you. Thank you both, counsel. Before you sit down, Judge Garbus, anything? Judge Noonan? No. Okay. Thank you both, counsel. The case just argued is submitted. We'll stand in recess. And Judge Noonan, we'll talk to you in the conference room in a couple of minutes. Thank you.
judges: Garbis, Noonan, Silverman